**Affirmed in Part, Reversed in Part, Remanded, and Majority, Concurring, and Concurring and Dissenting Opinions on Remand filed August 15, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-09-00118-CV

### WOLF HOLLOW I, L.P., Appellant

### V.

### EL PASO MARKETING, L.P. AND ENTERPRISE TEXAS PIPELINE, LLC, Appellees

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2006-70615**

## CONCURRING AND DISSENTING OPINION ON REMAND

I respectfully disagree with the majority's treatment of Wolf Hollow's gas quality claim. The majority concludes that this claim must be remanded because the Texas Supreme Court reversed two of the trial court's declarations. In my view, the supreme court did not address the merits of any declaration in the trial court's final judgment; the court held only that the declarations were not moot. Addressing

the merits for the first time on appeal, I would uphold each of the trial court's declarations and affirm the trial court's judgment that Wolf Hollow takes nothing.

The question on remand is whether Wolf Hollow may recover replacement power damages in its claims against El Paso. Insofar as Wolf Hollow's gas quality claim is concerned, our review requires that we determine the correctness of the trial court's third and fourth declarations. Those declarations provide as follows:

3. Wolf Hollow's exclusive remedy regarding gas quality claims for gas delivered by Enterprise Texas Pipeline is to receive an assignment as set forth in Article XIV, Section 14.1 of any claims that El Paso Marketing, L.P. may have against such transporter.

4. Article XXI of the Agreement does not apply to gas quality claims for gas delivered to Wolf Hollow on the Enterprise Texas Pipeline (referenced as "EPGT" or E.P.G.T. Texas Pipeline in the Agreement).

The majority concludes that the supreme court disposed of these declarations. I, however, cannot find any such holding in the supreme court's opinion. The supreme court ended its opinion with a final holding paragraph that only briefly addressed the trial court's declaratory relief. The court held: "Because Wolf Hollow's replacement-power claim survives, the trial court's declaratory judgment is not moot." *El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 146 (Tex. 2012). There was no additional holding specifically rejecting the trial court's individual declarations.

The majority nevertheless construes the supreme court's opinion as having reached the merits on the trial court's declaratory judgment. I do not believe that the posture of this case permits such a construction. When we decided this case on original submission, we made a limited holding vacating the trial court's declarations as moot. Our holding was guided by a determination that Wolf

2

Hollow's damages were consequential in nature, and therefore barred by contractual waiver. This reasoning made a merits-based decision on the declarations unnecessary. *See Wolf Hollow I, L.P. v. El Paso Mktg., L.P.*, 329 S.W.3d 628, 639, 642 (Tex. App.—Houston [14th Dist.] 2010). Based on our narrow holding, the supreme court had no occasion to address the merits of the trial court's declaratory judgment. The court simply rejected our waiver analysis and remanded for additional proceedings. Our court must now address the merits for the first time on remand.

When read together, the declarations describe the types of relief that are unavailable to Wolf Hollow when nonconforming gas is delivered on the Enterprise pipeline. Specifically, the declarations hold that Wolf Hollow is precluded from bringing gas quality claims against El Paso (Declaration 3) and from seeking the remedies provided by Article XXI (Declaration 4). In my opinion, this correctly states the rights of the parties under the contract.

I begin my analysis with a review of Article XIV, which the parties have entitled "Quality." As the caption appropriately suggests, Article XIV of the contract describes El Paso's general obligation to supply Wolf Hollow with natural gas that meets or exceeds certain quality specifications. This section also prescribes two distinct remedies available to Wolf Hollow when nonconforming gas is delivered to its facility. The applicable remedy is determined according to the pipeline that carried the nonconforming gas. The first remedy applies to the main pipeline, which is owned and operated by Enterprise. This remedy states as follows:

> [I]f [Enterprise] fails to deliver Gas at the [Enterprise] Point of Delivery that meets such quality specifications, then [El Paso] shall assign to [Wolf Hollow], or otherwise cause [Wolf Hollow] to be subrogated to, any claim that [El Paso] may have against [Enterprise]

as a result of such delivery failure under the Gas Transportation Agreements to which [Enterprise] is a party, as assigned by [Wolf Hollow] to [El Paso] . . . .

The second remedy refers to an alternative pipeline, the LSP pipeline. When nonconforming gas is delivered in this context, the parties bargained for the following remedy:

> In the event that . . . [El Paso] delivers Quantities of Gas on the LSP pipeline at the LSP Point of Delivery that fail to meet the quality specifications set forth herein, [Wolf Hollow] may refuse to accept any such Quantities of Gas. Any Quantity of Gas that [El Paso] delivers to the LSP point of Delivery and that [Wolf Hollow] rejects in accordance with this Section 14.1 shall be deemed a failure of [El Paso] to deliver such Quantity of Gas in accordance with the terms of this Agreement, with [El Paso's] liability for such failure determined in accordance with Article XXI hereof.

Thus, for quality disputes arising on the Enterprise pipeline, Article XIV requires that El Paso assign any claim to Wolf Hollow that El Paso might have against Enterprise. For disputes on the LSP pipeline, Article XIV allows Wolf Hollow to sue El Paso directly, with El Paso's liability determined by Article XXI.

Article XXI is the "Default and Remedies" provision of the contract. The parties drafted this article in three parts. The first part, Section 21.1, outlines the procedures for obtaining and calculating replacement power damages. Unless excused by events of force majeure, this part comes into play whenever El Paso fails to deliver a necessary quantity of gas. The final two parts concern "Events of Default." Section 21.2 is a definition section. Without referencing any gas quality issues, this section defines the term as either a failure to meet certain payment obligations or, as in Section 21.1, a failure to deliver a "Quantity of Gas" at the appropriate point of delivery. Section 21.3 prescribes several remedies available in the event of a default. The final remedy is broadly written in a form similar to a

4

Mother Hubbard clause, stating that the non-defaulting party may "pursue any other remedy provided under this Agreement, or now or hereafter existing at law or in equity or otherwise."

Wolf Hollow alleged that the nonconforming gas was delivered on the Enterprise pipeline, not the LSP pipeline. In light of this fact, I believe that Wolf Hollow is unable to recover replacement power damages in a quality claim against El Paso. The parties bargained for two separate remedies under Article XIV, and the contract classified these remedies based on the individual pipeline involved: an assignment when the nonconforming gas is delivered on the Enterprise pipeline, and the Article XXI remedies when the gas is delivered on the LSP pipeline. This distinction manifests the parties' intent that Article XXI remedies should not be available in quality disputes involving gas delivered on the Enterprise pipeline.

The trial court's declarations are corollaries of this distinction. If I am correct that Article XXI is excluded from the pool of available remedies, then Wolf Hollow must be precluded from "pursu[ing] any other remedy provided under this Agreement, or now or hereafter existing at law or in equity," as provided under Section 21.3. Accordingly, Wolf Hollow's assignment remedy must be exclusive. And not only is Section 21.1 unavailable because of the exclusivity of the assignment remedy, Section 21.1 treats only remedies for quantity issues, not quality.

The majority claims that the supreme court overruled the trial court's third declaration when it stated that "nothing in [Article XIV] suggests that [Wolf Hollow] cannot sue El Paso for breach of the Supply Agreement in allowing poor quality gas to be delivered." *See ante*, at Part IV.B (quoting *El Paso Mktg., L.P.*, 383 S.W.3d at 144). It is true, generally, that Wolf Hollow may look to El Paso for damages resulting from nonconforming gas, but the supreme court never stated

5

that this remedy is available in every context. The court did not acknowledge that two pipelines were connected to Wolf Hollow's plant or that there were separate remedies afforded under Article XIV. I would uphold the trial court's third declaration and conclude, consistent with the supreme court's opinion, that Wolf Hollow can sue El Paso for quality issues under Article XIV, but only when the quality dispute arises on the LSP pipeline.

The majority also claims that the trial court's fourth declaration was rejected based on the following sentence in the supreme court's opinion: "We thus conclude that there is evidence Wolf Hollow is entitled to recover replacement-power damages under Section 21.1(c) of the Supply Agreement, precluding summary judgment against Wolf Hollow based on the consequential damages waiver." *See ante*, at Part IV.C (quoting *El Paso Mktg., L.P.*, 383 S.W.3d at 145). I do not believe that this pronouncement even relates to the trial court's fourth declaration. The fourth declaration pertains specifically to "gas quality claims," but the word "quality" never appears in Section 21.1(c). That section deals strictly with gas quantity failures.

The majority overstates the supreme court's opinion when it relies on the statement quoted above. This statement is the concluding sentence to Part III of the supreme court's opinion, and contrary to the majority's suggestions, the focus of Part III is not whether Wolf Hollow should recover replacement power damages, but whether those damages survive the waiver of consequential damages. The court's holding was that replacement power damages are consequential damages, but they are excepted from the contract's waiver provision because the parties specifically bargained for them in their cover standard.

In Part III, the supreme court also considered whether Wolf Hollow had followed the procedures for applying the contract's cover standard. On original

6

submission, our court held that Wolf Hollow had failed to abide by the procedures. *See Wolf Hollow I, L.P.*, 329 S.W.3d at 639 ("Wolf Hollow does not contend that all of the predicates to its recovery of replacement power costs under Section 21.1 occurred in this case. In short, section 21.1 provides very specific remedies for very specific circumstances that Wolf Hollow does not alleged occurred in this case."). The supreme court disagreed with our judgment and held that there was evidence that Wolf Hollow had complied with the procedures. *See El Paso Mktg., L.P.*, 383 S.W.3d at 145 ("The court of appeals held that Wolf Hollow did not comply with the first two steps, which are prerequisites to the third. But there is evidence that it did."). The court then remanded to us for further proceedings.

The majority treats Part III as a definitive holding that Wolf Hollow "is entitled" to replacement power damages. As I read the opinion, the supreme court was simply deciding that our reasons for denying relief were incorrect. The ball is now in our court to consider whether the provisions cited in the trial court's declarations preclude Wolf Hollow's recovery of replacement power damages.

The majority finally decides that Article XXI is applicable to both quantity and quality disputes. *See ante*, at Part IV.C. The majority arrives at this conclusion because the supreme court substituted the term "Quantity of Gas," which is a specially defined term under the contract, for "gas as contractually required." *See El Paso Mktg., L.P.*, 383 S.W.3d at 140 n.8. The substitution appears to have been done for ease of the reader, and not for some larger purpose.

The contract defines a "Quantity of Gas" in terms of MMBtus, which are thermal units rather than units of volume. Wolf Hollow argues that a certain volume of conforming gas will yield a certain amount of thermal units, whereas the same volume of nonconforming gas will yield a different amount. This makes sense in the abstract; a fuel laden with contaminants will not burn as efficiently as

7

a fuel that is pure. But even if the term includes an implicit quality component, neither Wolf Hollow nor the supreme court has explained how this is enough to bring gas quality disputes within the scope of Article XXI. The contract already provides a mechanism for dealing with gas quality disputes. It's Article XIV. The parties clearly intended for Articles XIV and XXI to work together; the former even cross-references the latter. This court should strive to find an interpretation of the contract that gives effect to both provisions. Under the majority's view, however, Wolf Hollow may bypass Article XIV altogether.

I agree with the majority that Wolf Hollow cannot recover replacement power damages on its gas delivery claim. The majority correctly upholds the trial court's first and second declarations on this point. *See ante*, at Part IV.A. For the reasons stated above, I would also uphold the third and fourth declarations, and conclude that replacement power damages are unavailable on Wolf Hollow's gas quality claim. Because the majority holds otherwise, I respectfully dissent.


/s/    Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Christopher and Busby. (Christopher, J., majority). (Busby, J., concurring).

8